IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

PEGGY C. FREMD,                    )
                                   )
            Plaintiff,             )
                                   )
    v.                             )        CIVIL ACTION NO. 1:04CV620-W
                                   )
JO ANNE B. BARNHART, Commissioner  )
of Social Security,                )
                                   )
            Defendant.             )

**MEMORANDUM OF OPINION AND ORDER**

Plaintiff Peggy C. Fremd brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a decision by the Commissioner of Social Security ("Commissioner")

denying her application for disability insurance benefits under the Social Security Act.  The

parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28

U.S.C. § 636(c).  Upon review of the record and briefs submitted by the parties, the court

concludes that the decision of the Commissioner is due to be affirmed.

**FACTS**

On March 10, 2003, plaintiff filed an application for disability insurance benefits.  (R.

70-73).  Plaintiff claimed that she was disabled because of degenerative joint disease in both

feet, chronic trochanteric bursitis in her left hip, loss of sensation in her left index finger, and

osteoporosis.  (R. 100).  On December 11, 2003, after the claim was denied at the initial

administrative levels, an ALJ conducted an administrative hearing.  The ALJ subsequently

rendered his decision, in which he found, *inter alia*, that the claimant met the nondisability

requirements for a period of disability and Disability Insurance Benefits through December 31, 1999, that she suffered from the severe impairments of bilateral hallux valgus deformity and degenerative joint disease of both feet and hip bursitis, but that plaintiff's impairments did not preclude her from performing her past relevant work as a computer operator.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff filed a previous application for Title II disability insurance benefits, which was denied by an ALJ on September 25, 1997. (R. 36-44). This application was not

appealed after the Appeals Council denied review (R. 25-26), and the ALJ considering the present application dismissed the portion of plaintiff's application alleging an onset date prior to the date of the previous decision, pursuant to the doctrine of administrative *res judicata*. See 20 C.F.R. §§ 404.987 - 404.989.[1]

In his September 25, 1997 decision, the previous ALJ found that plaintiff had a residual functional capacity (RFC) for a limited range of light work, and that she could "lift and carry 20 to 25 pounds occasionally; sit eight hours out of eight; stand and walk six to eight hours out of eight; and [was] unable to balance, kneel, or crawl" and, further, that this RFC did not preclude plaintiff from performing her past relevant work as a legal secretary, computer operator or teacher's aide.  (R. 41, 43).   Since this decision was not further appealed by plaintiff after the Appeals Council denied review, and because the Commissioner has not reopened the decision, the ALJ's finding regarding plaintiff's RFC as of September 25, 1997 is binding on the parties.  See Draper v. Sullivan, 899 F.2d 1127 (11th Cir. 1990); cf. Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997)(applying *res judicata* against the Commissioner, and holding that previous ALJ's finding that plaintiff retained an RFC for sedentary work was binding on the ALJ considering a later application).  Additionally, this finding is not now subject to judicial review.  See Cherry v. Heckler, 760 F.2d 1186 (11th Cir. 1985)(absent constitutional challenge, decision not to reopen is not subject to judicial review); 42 U.S.C. § 405(g)(allowing 60 days to

---

[1]  Plaintiff does not address this issue in her brief.  She does not suggest that the application was, in fact, reopened, nor does she challenge the ALJ's decision not to reopen the previous application on constitutional grounds.

commence civil action seeking review of final decision of the Commissioner); § 405(h)(absent further review as allowed by § 405(g), "[t]he findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing").

The parties agree that plaintiff's insured status expired on December 31, 1999. (Plaintiff's brief, p. 2, 4, 5; Defendant's brief, p. 2).  Thus, the issue before the ALJ was whether plaintiff was disabled as defined by the Social Security Act between September 25, 1997 – the date of the previous decision denying benefits – and December 31, 1999.  See 42 U.S.C. § 423(a)(1)(A).  Since the parties are bound by the previous ALJ's determination as to plaintiff's residual functional capacity on September 25, 1997, the question before the ALJ was whether plaintiff's condition deteriorated at any point after September 25, 1997 and before December 31, 1999 to the point that she became disabled as defined by the Social Security Act.

The plaintiff challenges the Commissioners decision, arguing that: (1) the ALJ failed to properly credit the opinions of physicians; (2) the ALJ improperly rejected her testimony regarding her limitations; and (3) the ALJ improperly questioned plaintiff about the amount of her disability payments from the Veterans Administration.[2]

---

[2]  In an order establishing the briefing requirements in this action, the court directed that plaintiff include a section stating in a "concise, specific manner each issue which the plaintiff presents to the court for resolution."  (Doc. # 2, ¶ 2).  The court cautioned that "general statements of issues such as 'the ALJ's decision is not supported by substantial evidence' will not be considered by the court.  (Id. at p. 2 n. 2).  In section III of plaintiff's brief, plaintiff states that "[t]he single issue for this Court's determination is whether Peggy C. Fremd was 'totally vocationally disabled' on or before December 31, 1999."  (Doc. # 8, p. 5).  Plaintiff's statement of issues contains no identification of the specific errors that allegedly require reversal of the Commissioner's decision.  The court has determined that the three issues identified above are the only issues fairly raised by plaintiff's brief which warrant discussion.  A fourth "issue" argued by plaintiff is

**Opinion of Physicians**

Plaintiff contends that the ALJ did not give proper consideration to the opinions of treating and examining physicians.  An ALJ must give substantial weight to the opinion of a treating physician, "unless 'good cause' is shown to the contrary."  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004)(citation omitted).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Id. at 1241.  The ALJ may elect to disregard the opinion of a treating physician, but must clearly articulate his or her reasons for doing so.  Id.

Plaintiff first argues:

One of the treating physicians at Lyster Army Hospital, Dr. Stephen Bernstein, confirmed "osteoarthritis and Degenerative Joint Disease, osteoporosis, hypertension, depression, recovered alcoholism, and tobacco use disorders. Her surgeries include a hysterectomy, benign breast biopsy, and bilateral bunion and hammer toe surgeries with further corrective surgeries, totaling three on the right root and two on the left. Her condition is chronic . . ."

---

patently without merit.  Plaintiff contends that the vocational expert's testimony that "there should be sedentary jobs available in the local economy for which Peggy Fremd may be qualified" was "unfounded" because it was "based upon the hypothetical set of facts put forth by the Administrative Law Judge, and without ever having interviewed the Claimant, Peggy Fremd, or any of her physicians."  (Plaintiff's brief, pp. 15-16).  A vocational expert's failure to interview the claimant or her physicians does not provide a basis for reversing an ALJ's decision, nor does the mere fact that the VE's testimony is in response to a hypothetical question.  In this case, there was no hypothetical question posed to the VE, so there can be no challenge to the formulation of the hypothetical question.  Further, contrary to plaintiff's argument, the VE did not provide *any* testimony regarding jobs available in the local or national economy or plaintiff's ability to perform such jobs. The VE's testimony, which barely exceeds a single page in the transcript, related to how plaintiff's past work was classified, in terms of exertion and skill requirements, and to the DOT classification for a computer operator job. (R. 417-18).  In reaching its decision in the present case, the court specifically addresses only those issues briefed by the parties.  Additionally, plaintiff's brief references an appendix.  The brief includes a page following the certificate of service which includes the heading "X. APPENDIX."  However, no text follows this heading, and no document is attached to the brief. (See Doc. # 8, p. 25).

However, Dr. Bernstein's report could not conclude that the patient is totally vocationally disabled. In perfect fairness to both sides, Dr. Bernstein could not conclude that the Plaintiff was disabled prior to December 31, 1999 since he was not involved in her care at that time.

(Plaintiff's brief, Doc. # 8, pp. 11-12). In support of this argument, plaintiff cites the appendix to her brief which, as noted previously, was not filed with the court. Dr. Bernstein first treated plaintiff on April 7, 2003, over three years after her date last insured. (R. 172). The record contains treatment records from Dr. Bernstein, but the court has not located the particular language quoted above. Further, it is not clear from plaintiff's argument how, exactly, the ALJ is claimed to have erred with regard to Dr. Bernstein's medical opinion. There is no indication in the administrative record that Dr. Bernstein expressed an opinion as to plaintiff's disability prior to December 31, 1999, and plaintiff notes that Dr. Bernstein was unable to do so. (Doc. # 8, p. 12). In his treatment notes for June 9, 2003, Dr. Bernstein states, "Asked to have Release of Info done to complete letter for Disability lawyer's request for statement – explained may not be able to completely state desired verbiage due to recent assumption of care[.]" R. 232. There is no assessment of plaintiff's residual functional capacity by Dr. Bernstein in the record. The ALJ referenced Dr. Bernstein's treatment records in his decision. The ALJ did not disagree with any diagnoses made by Dr. Bernstein. Instead, the ALJ concluded that there was no evidence that some of plaintiff's impairments (hypertension, osteoporosis, loss of sensation of the middle finger, and depression[3]) existed at a severe level before her insured status expired. (R. 19).The record does not contain any contrary opinion expressed by Dr. Bernstein.

---

[3] According to Dr. Crawford, plaintiff "denies consulting a psychiatrist or psychologist." (R. 201).

Plaintiff next argues that the ALJ failed to give sufficient weight to a statement from

Dr. Steven Beranek:

> One of the military physicians stationed at Fort Rucker is Dr. Steven Beranek. Dr. Ber[a]nek stated specifically that Peggy Fremd "became disabled from her employment in July 1994 due to Degenerative Joint Disease in both feet." Dr. Ber[a]nek further stated that the Claimant's condition is *permanent*. (Record, P. 210).

(Plaintiff's brief, Doc. # 8, p. 12).  The ALJ discussed this statement from Dr. Beranek and

gave it "little weight" because: (1) "there is no reference to medically acceptable clinical or

laboratory diagnostic techniques that led to this conclusion"; (2) "it was based only on a

review of the unidentified records at Lyster hospital"; (3) the statement was not dated; (4) the

physician did not discuss specific limitations or restrictions caused by plaintiff's

impairments; and (5) Dr. Beranek "did not indicate that he had been an active treating source

for the claimant" (6) the opinion is inconsistent with the plaintiff's undertaking contractual

work, the activities of daily living related in the earlier ALJ's decision, and the opinion of

Dr. Crawford, the consultative examiner.  (R. 21).

As noted above, "good cause" exists for rejecting the opinion of a treating doctor

when that opinion is conclusory or not bolstered by the evidence.  The ALJ stated a number

of reasons for rejecting Dr. Beranek's conclusion.   The ALJ rejected the opinion in part

because it was an undated, conclusory statement that did not discuss specific limitations or

refer to medically acceptable clinical or laboratory diagnostic techniques that led to the

opinion regarding disability.  This reason, clearly articulated by the ALJ, is supported by

substantial evidence and constitutes good cause for rejecting Dr. Beranek's opinion.[4]

The plaintiff next points to a statement from Dr. Leo J. Troy, Jr., stating that "[t]his is one of the uncontroverted medical reports confirming Ms. Fremd's disability onset date as early as July, 1994."  (Plaintiff's brief, Doc. # 8, p. 13).  The statement is a form completed by Dr. Troy on which he indicates that plaintiff is totally disabled from "July 1994 thru present," and that she suffers from degenerative joint disease of the metatarsophalangeal joint (MTPJ) of both great toes, torn meniscus in her right knee, and chronic trochanteric bursitis of her left hip, and that she has  "longstanding disability of feet + hip worse recently."  (R. 211).  Even assuming that Dr. Troy is a treating source,[5] the ALJ was not required on the facts of this particular case to articulate reasons for rejecting Dr. Troy's

---

[4]  Dr. Beranek's statement, in its entirety, reads:

TO WHOM IT MAY CONCERN:

My name is Dr. Steven R. Beranek and I have been stationed at Ft. Rucker, Alabama since _____1993_____.  Lyster Army Hospital is located at Ft. Rucker, Alabama and military doctors are stationed here for brief periods of time.

I have reviewed the medical records of Peggy C. Fremd, SSN: [XXX-XX-XXX], located at Lyster Army Hospital and it is my medical opinion, based upon a degree of medical certainty that Ms. Fremd became disabled from her employment in July, 1994 due to:

    a.  Degenerative joint disease, both feet.  Condition is permanent.
    b.  Chronic bursitis, left hip.  Condition is permanent.
    c.  Residual loss of sensation on the tip of middle finger of left hand.

(R. 210).  The court notes, additionally, that Dr. Beranek's conclusion of disability since 1994 conflicts with the binding determination of the previous ALJ that plaintiff was not disabled on and before September 25, 1997.

[5]  Dr. Troy's disability statement is dated September 28, 1995, and he lists that same date as the only date of treatment.  (R. 211).  The ALJ in plaintiff's previous case treated Dr. Troy as an examining physician whose opinion was not entitled to deference.  (R. 39, 41).  See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987)(opinions of two physicians "not entitled to deference because as one-time examiners they were not treating physicians.")

statement.  The statement is dated September 28, 1995 – two years before the decision of the ALJ in plaintiff's previous case.  The form was considered by – and, as to its conclusion of disability since July 1994, rejected by – the previous ALJ in the decision issued on September 25, 1997.  (See R. 36-44, 363).   The ALJ in this case declined to reopen the previous application (R. 17), and was not required to reevaluate this evidence in the present case.[6]

Plaintiff argues that the ALJ improperly failed to credit the conclusion of Dr. Willis Crawford, the consultative examiner for the Commissioner, regarding plaintiff's disability. Dr. Crawford, after an examination conducted on September 16, 2003, expressed his opinion that "[t]his lady is not hirable [sic] because of her difficulty in walking due to her disease process and deformity.  She is able to sit and stand but not walk, lift, carry, and handle handling objects." (R. 203).  Since Dr. Crawford was a consultative examiner, not a treating physician, the ALJ was not required to establish good cause for rejecting his conclusion that plaintiff is "not hir[e]able."  However, it does not appear to the court that the ALJ necessarily rejected this opinion but, rather, that he concluded that it did not establish disability within the relevant time period which ended over 44 months before the opinion was rendered.  The ALJ specifically cited Dr. Crawford's report in his opinion (R. 21) and he relied on Dr.

---

[6] Dr. Troy's statement, like Dr. Beranek's, is conclusory.  It is a single page form which includes only plaintiff's diagnoses, the date of treatment, and the physician's conclusion that plaintiff is totally disabled.  It adds nothing to Dr. Beranek's statement and also conflicts with the binding determination of the previous ALJ regarding plaintiff's disability on and before September 25, 1997.  Additionally, Dr. Troy's statement amounts to little more than a naked assertion that plaintiff is disabled.  An unsupported assertion of disability by a medical source is not entitled to deference.  See 20 C.F.R. § 404.1527(e)(1).  To the extent the ALJ had any obligation to discuss this statement, his failure to do so is harmless error.

9

Crawford's functional capacity evaluation in reaching his determination regarding the credibility of plaintiff's allegations of pain and functional limitations during the adjudication period (R. 20). Thus, it is clear that the ALJ considered the report. Dr. Crawford's broad statement of plaintiff's disability, even assuming some basis for applying the statement to the time period ending in December 1999, is not consistent with the specific functional limitations set forth in the functional capacity assessment attached to his report. In the functional capacity evaluation, Dr. Crawford states that plaintiff is able to carry 15 pounds frequently and lift 30 pounds occasionally, that she can walk 30 minutes at a time for a total of two hours out of an 8-hour day, and that she is capable of constantly handling, fingering and feeling. (R. 206-07). The ALJ did not fail to credit the specific functional limitations set forth by Dr. Crawford but, rather, apparently concluded that the existence of those limitations in 2003 did not establish plaintiff's disability within the applicable adjudication period. (See R. 20, ¶ 2).

Plaintiff argues:

The Plaintiff's family physician, Dr. Henry Cochran, provided a clear and concise medical report dated June 24, 2003 where in he stated most succinctly:

"Ms. Fremd suffers from Degenerative Joint Disease of both feet and both ankles, which is a chronically progressive problem, She also suffers from Chronic Trochanteric Bursitis of the left hip. Both of the conditions stated are permanent.

As a result of these conditions, Ms. Fremd is unable to stand, walk or sit for prolonged periods of time. I do not consider her to be a viable candidate for rehabilitation or retraining for alternative employment. I believe she is totally vocationally disabled."

(Plaintiff's brief, Doc. #8, p. 14).  The plaintiff's argument quotes the substance of Dr. Cochran's statement in its entirety.  (See R. 209).  The ALJ gave this statement "little weight" because: (1) Dr. Cochran acknowledged within the statement that plaintiff's conditions were chronically progressive; (2) the statement was issued on June 24, 2003, well after the adjudication period; and (3) Dr. Cochran did not assert that his opinion of disability related back to 1999.  (R. 21).  The ALJ also noted that plaintiff saw Dr. Cochran only twice during the adjudication period and that "the office notes show nothing that would warrant a change in her RFC."  (R. 19; see also R. 144-45).  The reasons articulated by the ALJ are supported by substantial evidence and establish good cause for his failure to give Dr. Cochran's 2003 opinion that plaintiff "is totally vocationally disabled" controlling weight on the issue of whether plaintiff was disabled between September 25, 1997 and December 31, 1999.

## Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ improperly rejected her testimony regarding her limitations.  Plaintiff testified that she has osteoporosis, chronic bursitis in her hip, and arthritis in both feet, both knees and her back.  She stated that her condition causes her pain, that her feet are "real stiff," that her walking is not normal, that she has become knock-kneed and her knees swell, and that her back "at times feels like it's just jammed together." (R. 398-99).  According to plaintiff, walking makes her pain worse, and she cannot sit "for a long time at all."  (R. 400).  If she sits too long, her back hurts, and her legs get restless and cramp.  (Id.).  She takes Zoloft for pain management. (R. 401).  Plaintiff testified that her

condition is a progressive problem, and that she was worse in 2003 than in the previous year. (R. 402).  Plaintiff testified that, pursuant to a contract that began in 2000, she lived in a house at Coffee County Lake free of charge in exchange for services she provides at the facility including: issuing fishing permits, collecting license fees, recording the weight of fishermen's catches, opening the gate and locking it at night, keeping the office clean, and providing reports to the State on the number of fish caught, the water temperature, and the visibility.  (R. 402-408).  She drives five miles from the lake to the post office to mail her reports.  (R. 411).  Plaintiff stated that she is unable to cut the grass or fertilize the lake, so her friend and neighbor do that for her, that she moves "in slow motion" to clean the office, and that she did not plan to continue after the expiration of the three-year contract.  (R. 404-05).

Plaintiff testified that she worked at National Security Insurance as a Computer Operator before 1994, but that she was unable to continue that job because "it was all standing, . . . walking and standing and lifting, reports, computer reports. . . ."  She was offered a "trainee type job" in the law office of an attorney in Elba who knew that plaintiff was experiencing problems, but she was not qualified for the job and was employed as a favor.  Plaintiff stated that she quit the law office job because she was unable to perform the job due to her condition[7] and because her pain had driven her to excessive drinking, which caused her to enter alcohol rehabilitation in April 1994.  (R. 397-98, 408).  Plaintiff testified

---

[7] Plaintiff stated that her condition prevented her from continuing the law office job because of "[t]he not being able to, to sit, you know, for very long, walking to the Court House, just, the up and downness of the job, you know, getting it, you don't sit there all day, there's some walking."  (R. 408).

that she has not consumed alcohol since she completed rehabilitation. (R. 401).  She further testified that she is not skilled or trained in word processing, that the longest period of time she can sit without having to get up and move or walk is 30 to 45 minutes, and that it is beyond her ability now to walk five or six blocks.  (R. 409-10).  Plaintiff testified that Dr. Bernstein at Fort Rucker recommended physical exercise, but that another physician there said that the exercise was doing more harm than good, and the doctor took her off of the exercise program.  Plaintiff stated that she is not able to run, jog, lift light weights, or use a stationary bicycle. (R. 414-15).

In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).   "The standard also applies to complaints of subjective conditions other than pain."  Holt, *supra*. If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms.  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).  After considering the testimony, the ALJ may reject the claimant's subjective complaints. However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony.  Id.  "A claimant's subjective testimony supported by medical evidence that

satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).[8] "The credibility determination does not need to cite ""'particular phrases or formulations'" but it cannot merely be a broad rejection which is "'not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole."'" Dyer, supra, 395 F.3d at 1210 (citations omitted).

In this case, the ALJ clearly articulated his reasons for concluding that, although plaintiff did experience pain and limitations during the adjudication period, they did not exist to the degree alleged by plaintiff. The ALJ stated:

> The kind of treatment sought and received, the absence of pain-related hospitalizations or referrals to pain clinics, the wide range of activities of daily living, even the functional capacity evaluation done years after the adjudication period, all warrant a finding that disabling pain and disabling functional limits did not exist.

> X-rays taken on November 12, 1996, revealed the claimant had bilateral halux valgus deformity and degenerative joint disease (Exhibit B-1F, page 2). However, treatment notes dated August 27, 1999 and within the adjudication period, provide no indication of pain or problems in these areas (Exhibit 2F page 3). Recent treatment notes from Lyster Army Community hospital dated April 7, 2003 indicated the claimant complained of chronic lumbar back pain

---

[8] See also Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996):

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

with knee pain and right tibia discomfort and had known osteoporosis (Exhibit B-4F page 26); however treatment notes dated April 8, 2003, had indicated the claimant had no more than mild disc height loss with the remainder of the disc height relatively preserved. And these findings were for her condition as it existed years after the adjudication period. X-rays of her right knee revealed mild entophytes seen at the patella femoral compartment at the patellar (Exhibit B-4F page 10). Treatment notes dated January 16, 2001 indicated the claimant had no complaints of pain (Exhibit B-4F page 34).

Factoring against a finding of disabling pain or disabling functional limitation is the fact that 6 weeks after the expiration of her insurance status, the claimant entered into an agreement with the State to operate a concession business at a lake (Exhibit B-4D). The claimant's representative, in a statement issued on January 2, 200[4], acknowledged the claimant's employment for the Concession Contract of February 14, 2000 through February 13, 2003. The representative further reported that the claimant had resigned from this position because of her disability. He proposed that the claimant, when performing this work, had an assistant on duty to help with the process of performing the duties of this position, and pointed out that the claimant's only pay for this work was a furnished residence. (Exhibit B-9F). The undersigned acknowledges that this work cannot be defined as "substantial gainful activity," or for that matter "past relevant work." However, this activity did require significant attention and performance on the claimant's behalf and does not support her alleged degree of debilitation.

Also, the dearth of treatment sought and received during the period to be adjudicated is not reflective of the pain and limitations alleged by the claimant as discussed above (Exhibit B2F). Indeed, Nurse Delk noted the claimant's "active life style" and engagement in exercise in January of 2001, (Exhibit B2F page 34), more than a year after the date last insured.

(R. 20). As noted by the ALJ, treatment notes from plaintiff's January 16, 2001 visit to Fort Rucker for the results of her bone density test – just over one year after the end of the adjudication period – indicate that she "leads active lifestyle and exercises," and reflects a pain assessment of "0" on a scale of 0-10. (R. 180). Dr. Cochran's treatment notes for the adjudication period indicate that she was actually examined only once, on August 27, 1999, for complaints of a mouth ulceration, sore throat, and right ear pain. The remaining notes –

six during the adjudication period – are only annotations of prescription refills for Zoloft and

Premarin. (R. 144-45). The medical records from Fort Rucker do not reflect any treatment

within the adjudication period. (R. 146-82, 213-39). The functional capacity assessment

completed by Dr. Crawford in September 2003, which he based primarily on the plaintiff's

subjective complaints, indicated that plaintiff retained the capacity to perform the physical

exertion requirements of at least sedentary work. (See R. 206-008; 20 C.F.R. § 404.1567(a)).

The court concludes that the reasons cited by the ALJ for his decision to only partially credit

plaintiff's testimony regarding disabling pain and limitations are adequate and supported by

substantial evidence.

### Questioning Regarding VA Disability Payments

Plaintiff argues:

> Administrative Law Judge Murchison had an opportunity to question the
> Claimant, and was out of line to question the Claimant's military disability
> pay. This was completely irrelevant to the issue before His Honor, but he
> nonetheless emphasized that Peggy Fremd received disability retirement from
> the United States Army, and asked her how much she received. This was
> beyond the scope of a Social Security Disability hearing, and had no probative
> value on whether the Claimant was "totally vocationally disabled" prior to
> December 31, 1999.

(Plaintiff's brief, Doc. # 8, p. 19). As the Commissioner argues, even if the question were

improper, the ALJ made no reference to plaintiff's VA pension in his decision. There is no

indication in the opinion that the ALJ was biased against the plaintiff, that he relied on the

amount of her income in making his determination of disability, or that he neglected to

follow applicable law in assessing her claim. Accordingly, the ALJ's question regarding the

amount of plaintiff's VA disability pension does not provide a basis for reversing the

decision. Cf. Borgens ex rel Borgens v. Halter, 164 F. Supp.2d 1309 (M.D. Fla. 2001)(ALJ's comment at hearing that his own son had been diagnosed with ADHD and was on medication for the condition did not establish bias where there was no indication in the record that the information had any effect on the ALJ's finding).

### Plaintiff's Motion for Summary Judgment

In a motion filed on February 22, 2005 (Doc. # 14), plaintiff asserts that she is entitled to summary judgment in her favor. Plaintiff makes no substantive arguments in the motion, but attaches five exhibits. Three of these exhibits – the June 24, 2003 letter from Dr. Cochran, the September 16, 2003 report of Dr. Crawford, and the undated letter from Dr. Beranek – were before the ALJ and are addressed above. For the reasons set forth above, plaintiff is not entitled to summary judgment on the basis of these exhibits.

Plaintiff also submits a letter from Debbie L. Jared, the attorney who employed plaintiff between 1991 and 1994, and deposition testimony from Dr. Cochran. This evidence is not a part of the administrative record and may not be considered by the court in determining whether the ALJ's decision is supported by substantial evidence. See Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998)("[W]hen the [Appeals Council] has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence.").

However, the court will consider whether Jared's affidavit and Cochran's deposition testimony justify remand under sentence six of 42 U.S.C. § 405(g). In order to prevail on a claim for remand under sentence six of § 405(g), a plaintiff must show that (1) there is new,

non-cumulative evidence; ( 2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the appropriate administrative level.  See Falge, 150 F.3d at 1323.

Jared expresses her opinion that plaintiff is "totally vocationally disabled" based on her observation of plaintiff's skills and limitations during the time that plaintiff worked for Jared, between 1991 and 1994.  (Exhibit A to Doc. # 14).[9]  Dr. Cochran's deposition testimony is phrased almost entirely in the present tense and, thus, appears to relate primarily to plaintiff's condition as it existed at the time of the deposition in January 2005.  (See Exhibit E to doc. # 14).  Dr. Cochran also reaffirms the opinion he rendered on June 24, 2003 (and which was considered by the ALJ) that plaintiff was then "totally vocationally disabled."  (Id., p. 5).  Dr. Cochran further testified as follows:

> Q.  Dr. Cochran, is there any possibility that Ms. Fremd could return to her former employment; that is, 40 hours a week either as a secretary or as an assistant or as a county lake manager?

---

[9]  Jared states:

> My name is Debbie L. Jared, a licensed practicing attorney with offices located at 130 Factory street in Elba, Alabama. During the years 1991-1994 Peggy Fremd was employed in my law office as a secretary and clerical assistant.  She attempted to work on a full time basis, but her physical limitations prevented her from carrying out her work responsibilities.  Peggy Fremd had no formal training or schooling on modern computer operation, and cannot operate a word processor.  She is neither skilled nor trained in word processing and cannot prepare wills, deeds, or pleadings. Due to Peggy's chronic bursitis and severe arthritis she was unable to take the mail to the Post Office or file pleadings at the courthouse.  Because of her medical impairments she often had to miss work.  In my opinion as her employer, Peggy Fremd is totally vocationally disabled.

(Exhibit A to Doc. # 14).

18

A.  I don't see any way that she could handle it, no.

Q.  Then help me, if you will, by establishing Ms. Fremd's disability onset date.  And we are in agreement that Peggy remained insured with social security up through and including December 31st of 1999.  But after that date, her insured status has expired.

Can you refer to your notes and your medical records and confirm that Ms. Fremd's condition so existed on or before December 31st of 1999?

A.  Yes.  I know her problem with her feet and ankles existed long before that time.  In fact, I think that probably dates back into the early to middle 90s because she's had that ever since I've known her.

The back problem, I think, began as an intermittent problem and has become one that's pretty much there all the time, but that preexisted '99 as well.  There's no way that degree of arthritis that showed on the x-ray could have formed in a short period of time.  That's probably ten years worth of arthritis that we're looking at on the x-ray, maybe even longer than that.

Q.   Your diagnosis of the severe arthritis and bursitis, has this been a continuous illness that Ms. Fremd has suffered with?

A.  Oh, yes.

Q.  And do these conditions persist even until today?

A.  Absolutely.

 (A discussion was held off the record.)

Q.  Dr. Cochran, as Ms. Fremd's condition worsened are you familiar with the depression that she suffered?

A.  Yes, I am.

Q.  And have you treated her for the depression?

A. Yes, I have.

Q.  And can you say whether her depression was severe enough to require treatment and medication?

A.  I don't think there's any question.

(Cochran depo., Exhibit E to Doc. # 14, pp. 7-9).  Dr. Cochran then testified that plaintiff's depression was not the only reason for the antidepressant medication, as it is also useful in pain management.  (Id., p. 10).

The court does not address whether this evidence is new, non-cumulative, or material, because it is evident that plaintiff has failed to demonstrate good cause for her failure to introduce the evidence at the appropriate administrative level.  The ALJ issued his decision in this case on February 12, 2004 (R. 23), and the Appeals Council denied review on May 28, 2004 (R. 9-12).  Jared's affidavit is dated November 2004 and Cochran's deposition did not occur until January 2005, both several months after the last administrative action in this case.  However, the fact that the affidavit was not prepared and the deposition not taken until after the administrative proceedings had terminated does not establish good cause for plaintiff's failure to present the evidence earlier.  In Falge, the claimant produced an additional report from his treating physician after the ALJ's decision, but before the Appeals Council denied review.  Falge, supra, 150 F.3d at 1322.  The new report was dated May 1994, before the hearing, but was not actually prepared until December 1994, after the ALJ's decision.  Id. at 1323 n. 8.  Despite the fact that the report did not actually exist until after the ALJ issued his decision, the Eleventh Circuit found that the claimant had not established "good cause" why the report was not made available during proceedings before the ALJ.  Id. at 1323.  The Eleventh Circuit noted  that "[t]he opinions set out in the report . . . seem to have been based on medical examinations and tests conducted before the ALJ rendered his

20

decision." Id. at 1323 n. 8.

Likewise, in the present case, the testimony offered by Jared is clearly based on her observations of plaintiff between 1991 and 1994, a decade before the ALJ issued his decision. Similarly, there is no indication that Cochran's deposition testimony regarding plaintiff's condition before December 31, 1999 is based on any medical examination that occurred after the date of the ALJ's decision. Plaintiff offers no reason this evidence could not have been gathered and produced at the appropriate time in the administrative process and makes no argument that she has established good cause for her failure to do so. Accordingly, plaintiff is not entitled to remand on the basis of the new evidence.

## CONCLUSION

The plaintiff may very well be disabled at present. However, to demonstrate her entitlement to benefits under Title II, plaintiff was required to establish that she was disabled during the period after the final decision of the Commissioner with regard to her previous application and before the expiration of her insured status. The court concludes that the allegations of error she has raised are without merit and that, upon review of the record as a whole, the decision of the Commissioner that plaintiff failed to establish disability within the relevant period is supported by substantial evidence.[10] Accordingly, the decision of the Commissioner is due to be AFFIRMED. A separate judgment will be entered.

---

[10] Plaintiff argues that none of the "ten or more" military physicians who provided medical care and treatment to her over the course of 14 years are now available to provide medical evidence of her condition prior to 1999. (Plaintiff's brief, Doc. # 8, pp. 10-11). While this is unfortunate, the Commissioner is not required to render a finding of disability where the available medical evidence does not support such a conclusion. The court notes that this situation may have been exacerbated by plaintiff's failure to file a second application for benefits until over three years after the expiration of her insured status.

Additionally, it is

ORDERED that plaintiff's motion for summary judgment (Doc. # 14) and motion for

hearing (Doc. # 16) are DENIED.

Done, this 29th day of December, 2005.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE